## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re                                    :    Chapter 11

                                         :

VIVUS, INC., *et al.*,                   :    Case No. 20-11779 (LSS)

                                         :

                                         :    (Jointly Administered)

Debtors.[1]                              :

                                         :    **Re: Docket Nos. 14, 339, 341, 360, 377, 389,**
                                         :    **391, 392, 393, 394, 408, 416 & 418**

                                         :

---------------------------------------------------------- x

### ORDER (I) APPROVING DISCLOSURE STATEMENT
### AND (II) CONFIRMING SECOND AMENDED
### JOINT PREPACKAGED CHAPTER 11 PLAN

Upon the filing by VIVUS, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), of the *Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* [Docket No. 416] (as amended, modified, or supplemented, the "**Plan**"),[2] which is attached hereto as __Exhibit A__, and the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Debtor Affiliates* [Docket No. 14] (as amended, modified, or supplemented, the "**Disclosure Statement**"); and the Court having entered the *Order (I) Scheduling Combined Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation Procedures, and (C) Confirmation of Prepackaged Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline,*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Vivus B.V. (1942); Vivus Digital Health Corporation (0625); VIVUS, Inc. (6179); and Vivus Pharmaceuticals Limited (9329). The Debtors' corporate headquarters and service address is 900 E. Hamilton Avenue, Suite 550, Campbell, CA 95008.

[2]  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

*Notice of Commencement, and Opt-Out Notice; (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally Waiving Requirement of Filing Statement of Financial Affairs and Schedules of Assets and Liabilities; (VI) Conditionally Waiving Requirement to Convene the Section 341 Meeting of Creditors; and (VII) Granting Related Relief Pursuant to Sections 105(a), 321, 521(a), 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 1007, 2002, 3017, and 3018* [Docket No. 73] (the "**Scheduling Order**"); and upon the *Notice of (I) Commencement of Chapter 11 Bankruptcy Cases, (II) Combined Hearing on Disclosure Statement, Confirmation of Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Objection Deadlines and Summary of Joint Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 76] and the *Notice of (I) Continued Combined Hearing on Disclosure Statement, Confirmation of Second Amended Chapter 11 Plan, and Related Matters, (II) Objection Deadlines, and (III) Summary of Amendments to Debtors' Second Amended Chapter 11 Plan* [Docket No. 341] (collectively, the "**Combined Notice**"); and upon the *Notice of Existing Stock Record Date in Connection with the Second Amended Joint Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* [Docket No. 360] (the "**Record Date Notice**"); and upon the affidavits of service [Docket Nos. 95, 118, 137, 305, 342, 361, 370, 381, 382]; and the Debtors having filed the *Notice of Filing of Amended and Restated Plan Supplement to Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* [Docket No. 367], the *Notice of Filing Further Revised Form of Royalty Agreement and Form of Liquidating Trust Agreement* [Docket No. 418], and *Notice of Filing Exhibit to Form of Royalty Agreement* [Docket No. 377] (together, as may be further amended or supplemented, the "**Plan Supplement**") which included, among other things, the form of Royalty Agreement, the form of

2

Liquidating Trust Agreement, the Exit Facility Agreement, and the form of opt-out notice [Docket No. 408] (the "**Opt-Out Notice**"); and the Debtors or the Official Committee of Equity Security Holders of VIVUS, Inc. (the "**Equity Committee**"), as applicable, having filed (A) the *Declaration of Brian Karpuk on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Proposed Joint Prepackaged Chapter 11 Plan of Reorganization* on August 18, 2020 [Docket No. 187] (the "**Voting Certification**"), (B) the *Declaration of Teri L. Stratton in Support of Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* on August 18, 2020 [Docket No. 191], (C) the *Declaration of Ben Pickering in Support of (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* on August 18, 2020 [Docket No. 190], (D) the *Declaration of Jill Frizzley in Support of Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* on August 18, 2020 [Docket No. 188], (E) the *Declaration of Thomas B. King in Support of Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* on August 18, 2020 [Docket No. 189], (F) the *Debtors' Memorandum of Law in Support of (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and its Affiliated Debtors* [Docket No. 185], (G) the *Debtors' Supplemental Memorandum of Law in Support of (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its*

*Affiliated Debtors* [Docket No. 389], (H) the *Declaration of Mark K. Oki in Support of Debtors'*

*Supplemental Memorandum of Law in Support of (I) Approval of Debtors' Disclosure Statement,*

*(II) Final Approval of Solicitation Procedures and Forms of Ballots, and (III) Confirmation of*

*Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of VIVUS, Inc. and Its*

*Affiliated Debtors* [Docket No. 391], (I) the *Statement of the Official Committee of Equity*

*Security Holders in Support of Confirmation of the Second Amended Joint Prepackaged Chapter*

*11 Plan of Reorganization of VIVUS, Inc. and Its Affiliated Debtors* [Docket No. 392], (J) the

*Declaration of Charles Boguslaski in Support of Confirmation of the Second Amended Joint*

*Prepackaged Chapter 11 Plan of Reorganization of Vivus, Inc. and its Affiliated Debtors*

[Docket No. 393], and (K) the *Declaration of Clark Dees in Support of Confirmation of the*

*Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Vivus, Inc. and its*

*Affiliated Debtors* [Docket No. 394] (A through K, collectively, the "**Confirmation**

**Documents**"); and this Court having held hearings on August 25, 26, 28, and 31, 2020 and

September 11, 2020, a status conference on November 5, 2020, and a further hearing on

December 3, 2020, to consider, among other things, approval of the Disclosure Statement and

confirmation of the Plan (the "**Combined Hearing**"); and upon the Confirmation Documents,

and the evidence adduced at, and the record of, the Combined Hearing; and upon the record of

these Chapter 11 Cases; and after due deliberation:

        **THIS COURT HEREBY FINDS:[2]**

        A.    This Court has jurisdiction over these Chapter 11 Cases pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United*

*States District Court for the District of Delaware*, dated as of February 29, 2012.  Venue of these

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order hereon under Article III of the United States Constitution.

B.     The Disclosure Statement provided holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

C.     The Disclosure Statement (including all exhibits thereto) and the Combined Notice provided holders of Claims and Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

D.     The Debtors have complied with the Scheduling Order.  Notice of the Combined Hearing was proper, timely, and adequate in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  No other or further notice is required.

E.     The Record Date Notice provided the holders of Existing Stock with notice that November 13, 2020 is the Existing Stock Record Date.  Notice of the Existing Stock Record Date was proper, timely, and adequate under the circumstances.  No other or further notice is required.

F.     Each of the Debtors has met the burden of proving that the Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code by a preponderance of the evidence.

G.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

RLF1 24426849v.1

H.      Each of the Debtors solicited the Plan in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  The Plan contains certain modifications made after expiration of the Voting Deadline, including, without limitation, the revised Existing Stock Settlement that was the result of the mediation by and between the Debtors, the Supporting Noteholder and the Equity Committee that occurred on November 1, 2020.  All affected parties in interest had due and adequate notice and opportunity to participate in the Plan confirmation process and the Combined Hearing.  The modifications to the Plan do not require additional disclosure or resolicitation of votes.

I.      Each of the Debtors, the Supporting Noteholder, the Equity Committee and the Exit Lender have acted in good faith in all aspects with respect to the Plan, including within the meaning of section 1125(e) of the Bankruptcy Code, and the Debtors proposed the Plan in good faith and not by any means forbidden by law.  The Plan has been proposed with the legitimate purpose of maximizing the returns available to creditors and other parties in interest. The arm's-length negotiations between, among others, the Debtors, the Supporting Noteholder and the Equity Committee, as well as the support of creditors and the Equity Committee for the Plan, provide independent evidence of the good faith in proposing the Plan.

J.      With respect to each Debtor, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.

K.      The holders of Claims in Class 3 (Secured Notes Claims) and Class Four (Convertible Note Claims) are impaired under the Plan and have voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

L.      The Debtors are insolvent.  Holders of Interests are not entitled to any

distribution under the Plan on account of such Interests.

M.    The Plan does not discriminate unfairly and is fair and equitable with respect to the Classes that are impaired and are deemed to reject the Plan.

N.    As set forth below, the releases, injunctions, and exculpations in Article X of the Plan are appropriate under applicable law.

(a)    **Debtor Releases.**  For the reasons set forth in the Confirmation Documents, the releases being provided by the Debtors in favor of the Released Parties pursuant to Section 10.7(a) of the Plan are (i) fair, equitable, and reasonable, (ii) integral elements of the Plan and resolution of the Chapter 11 Cases, without which the Debtors' ability to confirm the Plan would be seriously impaired, and (iii) in the best interests of the Debtors, the Estates, and creditors.  Accordingly, such releases constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

(b)    **Third Party Releases.**  For the reasons set forth in the Confirmation Documents, the third party releases being provided by the Releasing Parties in favor of the Released Parties pursuant to Section 10.7(b) of the Plan are appropriate.

(c)    **Exculpation.**  For the reasons set forth in the Confirmation Documents, the exculpations in favor of the Exculpated Parties in Section 10.8 of the Plan are appropriate in that the Exculpated Parties are estate fiduciaries and no Exculpated Party is being exculpated for acts or omissions that constitute willful misconduct or gross negligence.  Accordingly, such provision complies with the standard articulated in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).

(d)    **Injunction.**  For the reasons set forth in the Confirmation Documents, the injunction set forth in Section 10.9 of the Plan is appropriate in that such injunction is necessary to implement, preserve, and enforce the releases and exculpations set forth in Article X of the Plan, and is narrowly tailored to achieve such purpose.

O.    The form of the ballots (collectively, the "**Ballots**") provided to and used by the holders of Claims in Classes 3 and 4 to vote on the Plan and/or opt out of the releases contained in Section 10.7(b) of the Plan adequately addressed the particular needs of the Chapter

11 Cases and were appropriate.

P.      The Opt-Out Notice to be used by the holders of Interests to opt-out of the releases in Section 10.7(b) of the Plan adequately addresses the particular needs of the Chapter 11 Cases and are appropriate.

Q.      Each of the settlements and compromises incorporated in the Plan, including, without limitation, the Existing Stock Settlement, is in the best interests of the Debtors, the Estates, the Debtors' creditors, Interest holders and other parties in interest, and is both fair and equitable and within the range of reasonableness.

R.      The Claims and Interests placed in each Class are substantially similar to other Claims and Interests in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Debtors' classification scheme does not unfairly discriminate between holders of Claims or Interests.  Furthermore, the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**IT IS HEREBY ORDERED THAT:**

**A.      Approval of Disclosure Statement, Ballots, Solicitation Procedures, and Opt-Out Notice**

1.      The Disclosure Statement is approved as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.  All objections or reservations of rights in respect of the Disclosure Statement that have not been withdrawn or resolved before the Combined Hearing are overruled.

2.      The Ballots are approved.

3.      The Opt-Out Notice is approved.  Within three (3) business days after the

8

entry of this Order, the Debtors shall serve a copy of the Opt-Out Notice on holders of Existing Stock as of the Existing Stock Record Date (*i.e.*, November 13, 2020), which shall constitute sufficient notice of the opportunity for holders of Existing Stock as of the Existing Stock Record Date to opt out of the releases set forth in section 10.7(b) of the Plan.  January 19, 2021 at 5:00 p.m. (Eastern Time) is the deadline by which holders of Existing Stock as of the Existing Stock Record Date must opt out of the releases set forth in section 10.7(b) of the Plan by completing and timely returning an Opt-Out Notice in accordance with the instructions set forth in the Opt-Out Notice.

4.    The Solicitation Procedures utilized by the Debtors satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are approved.

**B.    Confirmation of Plan**

5.    The Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code and is confirmed pursuant to section 1129 of the Bankruptcy Code.  The Debtors and the Reorganized Debtors (as applicable) are authorized to take all actions required to effectuate the Plan and the transactions contemplated therein.

6.    All objections or reservations of rights in respect of the Plan that have not been withdrawn or resolved before the Combined Hearing are overruled.

7.    The terms of the Plan, the Plan Supplement, and the exhibits thereto are approved by the Court and are binding.  All other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular

article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order shall have no effect on the Court's approval and authorization of, or the validity, binding effect, or enforceability of, the Plan, the Plan Supplement, or any related document.

8.      Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or in this Order, until an Allowed Unimpaired Claim in Class 1, 2, or 5 of the Plan that arises prior to the Effective Date has been (a) paid in full in accordance with the Plan and applicable law, on terms agreed to between the holder of such Claim and the Debtors or Reorganized Debtors, as provided for in the Plan, or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (b) resolved pursuant to the Disputed Claims process set forth in Article VII of the Plan or the Cure Dispute procedures set forth in Section 8.2 of the Plan:  (x) the provisions of Sections 10.2 or 10.3 of the Plan shall not apply or take effect with respect to such Claim, (y) such Claim shall not be deemed settled, satisfied, resolved, released, or discharged by any provision of the Plan or the Plan Supplement, and (z) the Assets of the Debtors or their Estates shall not vest in the Reorganized Debtors free and clear of such Claims.  Except as otherwise set forth in the Plan, including the Disputed Claims process set forth in Article VII of the Plan or the Cure Dispute procedures set forth in Section 8.2 of the Plan, Holders of Allowed Unimpaired Claims in Class 1, 2, or 5 of the Plan shall not be subject to any claims resolution process in the Bankruptcy Court in connection with their Claims. Except as otherwise set forth in the Plan, Holders of Allowed Unimpaired Claims in Class 1, 2, or 5 of the Plan to which (a) and (b) above are inapplicable and that are not subject to the Disputed Claims process set forth in Article VII of the Plan or the Cure Dispute procedures set forth in Section 8.2 of the Plan shall retain all of their rights under applicable non-bankruptcy law to pursue their Claims against the Debtors or Reorganized Debtors in any forum with

jurisdiction over the parties, and all parties shall retain any and all rights, claims, causes of action, defenses, and remedies with respect thereto.

9.       Each of the settlements and compromises incorporated into the Plan, including, without limitation, the Existing Stock Settlement, satisfies the requirements of Section 1129 and Bankruptcy Rule 9019 and is approved and shall be effective immediately and binding on all parties in interest.

10.      Formation of the Liquidating Trust is an essential element of the Plan. The Liquidating Trust Agreement and all exhibits thereto, including, without limitation, the form instrument of assignment attached thereto as **Exhibit B** (the "**Instrument of Assignment**"), are hereby approved.   The Debtors, the Reorganized Debtors, the Liquidating Trust and the Liquidating Trustee, as applicable, each acting by and through their respective officers and agents, hereby are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, forming the Liquidating Trust and entering into the Liquidating Trust Agreement, as to each without any further order of the Court.  Pursuant to the Plan and the Liquidating Trust Agreement, on the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the initial holders (and permitted transferees thereof) of Liquidating Trust Interests, which initial holders shall be determined once the deadline to return Opt-Out Notices has passed.  The Liquidating Trust is authorized and empowered, pursuant to the Plan and the Liquidating Trust Agreement, to administer the Liquidating Trust Assets and make distributions on account thereof as provided for under the Plan and the Liquidating Trust Agreement.

11.      Any and all Liquidating Trust Interests[3] are non-transferable (in whole or

---

[3]   Capitalized terms not defined in this paragraph shall have the meaning ascribed in the Liquidating Trust Agreement.

RLF1 24426849v.1

in part) other than if transferred by will, intestate succession, or by instrument to an *inter vivos* or testamentary trust in which the Liquidating Trust Interest is to be passed to beneficiaries upon the death of the holder of the interests as trustee, as to each so long as the No Obligation Requirements are met and applicable securities laws are complied with in connection with each such transfer or disposition; provided, that, the Liquidating Trustee, with the consent of the Liquidating Trust Supervisory Board, may resolve (with notice of such resolution to be promptly provided to Reorganized VIVUS and Newco) any time after the Effective Date to allow the transfer or disposition of Liquidating Trust Interests generally, so long as the No Obligation Requirements are met and applicable securities laws are complied with in connection with each such transfer or disposition.   Neither the Liquidating Trustee nor the Liquidating Trust Supervisory Board shall permit any transfer or disposition, or any potential transfer or disposition, of Liquidating Trust Interests except as provided in Section 2.05 of the Liquidating Trust Agreement and in compliance with Section 3.09(b) of the Liquidating Trust Agreement. Transfers or dispositions of Liquidating Trust Interests permitted by the previous sentence may be made only by using the form of Instrument of Assignment without modification.   The Liquidating Trustee and Reorganized VIVUS shall be provided prompt notice and documentation of any transfer or disposition (including copies of all executed Instruments of Assignment) in order to confirm compliance with the obligations of this paragraph.   Any transfer or disposition of Liquidating Trust Interests that does not meet the requirements of this paragraph, including any purported transfer made without the execution of an Instrument of Assignment without modification, shall be void *ab initio* and not recognized for any purpose.

12.     The Royalty Agreement is hereby approved.  The Debtors, Newco, and the Royalty Agent, each acting by and through their respective officers and agents, hereby are

RLF1 24426849v.1

authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, entering into the Royalty Agreement without any further order of the Court.

13.     The Debtors, the Reorganized Debtors, Newco, the Supporting Noteholder, the Exit Facility Lender, any of their Affiliates, and any controlling Persons of any of the foregoing are legally separate and distinct from the Liquidating Trust and shall have no direct or indirect liability (including, but not limited to, in respect of any Claims, Causes of Action, Liens or Interests), duties (fiduciary or otherwise) or obligations arising out of, related to, or concerning (1) the Liquidating Trust, including but not limited to, the funding of the Liquidating Trust or lack thereof (but excluding funding of the Liquidating Trust as contemplated in section 1.05(i) of the Liquidating Trust Agreement and the Royalty Payments that are due and payable by Newco in accordance with the terms and conditions of the Royalty Agreement), any periodic reports that the Liquidating Trust may file with the U.S. Securities and Exchange Commission, administration of the Liquidating Trust, any tax treatment of the Liquidating Trust, any payment or non-payment of taxes by the Liquidating Trust, any transfer (or non-transferability) of Liquidating Trust Interests, or any circumstances concerning securities or tax laws (including as to the Liquidating Trust's ability or inability to comply with any reporting requirements under the Securities Act or the Exchange Act), liabilities (including, but not limited to, in respect of any Claims, Causes of Action, Liens or Interests), or obligations relating to the Liquidating Trust, the Liquidating Trust Interests, or administration thereof, or (2) any holders of Liquidating Trust Interests (or any transferee thereof) (solely in their capacities as such) (including as to any ability or inability to transfer or dispose, or the transfer or disposition of, Liquidating Trust Interests at any time); *provided*, *however*, that this paragraph 13 shall not impair or waive Newco's contractual obligations or rights under the Royalty Agreement or

RLF1 24426849v.1

VIVUS, Inc. and its subsidiaries' obligations under paragraph 29 of this Order.    Neither Reorganized VIVUS nor any of its Affiliates are assuming any direct or vicarious obligation or liability of the Liquidating Trust.    Neither Reorganized VIVUS and its Affiliates, nor the Liquidating Trust, will be or will be deemed to be consolidated with, a continuation, alter ego, merged or *de facto* merged with, or a successor of the other or of the Estates as a result of the consummation of the Restructuring Transactions.

14.    Without any further action, this Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.    In accordance with section 1142(b) of the Bankruptcy Code, upon the entry of this Order, the Debtors or the Reorganized Debtors, as applicable, each acting by and through their respective officers and agents, are authorized to take any and all actions necessary or appropriate, consistent with the terms of the Plan Documents, to implement the Plan without any further notice or order of the Court.

15.    The Debtors and the Reorganized Debtors (as applicable) are authorized to enter into, and take such actions as may be necessary or desirable to perform under the Exit Facility and all other documents or agreements related thereto, and all transactions contemplated thereby, including the payment or reimbursement of any fees, indemnities, and expenses under or pursuant to any such documents and agreements entered into or delivered in connection therewith.    The Exit Facility and each of the Exit Facility Documents constitute legal, valid, and binding obligations of the Reorganized Debtors on and after the Effective Date.    Upon the closing of the Exit Facility, the lenders thereunder shall have valid, binding, perfected, and

enforceable Liens on, and security interests in, the collateral specified in the Exit Facility Documents, as applicable, with the priorities set forth in the Exit Facility Documents, and subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, as applicable, pursuant to this Order and without the need for perfection under non-bankruptcy law or security filings.  The Reorganized Debtors and lenders granted such Liens and security interests are each hereby authorized to make any and all filings and recordings necessary or desirable in connection with such Liens and security interests.  The obligations, guarantees, mortgages, pledges, Liens, and security interests granted pursuant to or in connection with the Exit Facility are, in each case, granted in good faith, for good and valuable consideration, and for legitimate business purposes as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, equitable subordination, or recharacterization and shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors on and after the Effective Date, enforceable in accordance with their terms.

16.    Subject to payment of only any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order.  No such agency may require any payment that is the subject of Section 12.1 of the Plan in respect of any filing or recording for such purpose.

17.    The amendments and modifications to the plan of reorganization since the filing thereof, including as may be reflected in the Plan and this Order, are approved in accordance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a).

18.     The assumption of executory contracts and unexpired leases as set forth in Article VIII of the Plan is approved.  As set forth in Section 8.1 of the Plan, subject to the payment of any cure amounts as ordered by the Court (or the resolution of any dispute over cure amounts in a subsequent Court order), all prepetition executory contracts and unexpired leases not otherwise assumed or rejected shall be assumed by the applicable Reorganized Debtor on the Effective Date, other than the executory contracts or unexpired leases (a) expired or terminated pursuant to their own terms or by agreement of the parties thereto, (b) subject to a motion to reject filed by the Debtors on or before the Effective Date, or (c) specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.

19.     Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by this Court or any other Entity:  (a) Releases by Debtors (Section 10.7(a)); (b) Releases by Releasing Parties (Section 10.7(b)); (c) Exculpation (Section 10.8); and (d) Injunction Related to Release and Exculpation (Section 10.9).

20.     The Debtors may satisfy their obligation to pay the Existing Stock Cash by employing Stretto as disbursement agent under a separate agreement with respect to the Existing Stock Settlement and depositing irrevocably with Stretto the Existing Stock Cash payable pursuant to the Existing Stock Settlement.

21.     Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, or this Order, no provision of the Plan or this Order shall (a) preclude the United States Securities and Exchange Commission ("**SEC**") from enforcing its police or regulatory powers; or, (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor Person or non-

debtor entity in any forum (with respect to such Person's or entity's direct liability).  For the avoidance of doubt, any legal or equitable rights, claims, causes of action, or defenses of the Debtors, Reorganized Debtors or any non-debtor in respect thereof are reserved and preserved.

22.    The Debtors shall cause to be served a notice of the entry of this Order and occurrence of the Effective Date (the "**Notice of Effective Date**") upon (a) all parties listed in the creditor matrix maintained by Stretto and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date.

**C.    Administrative Expense Claims Bar Date**

23.    Subject to the Cash Collateral Order and Section 2.1 of the Plan, requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtors in accordance with the procedures specified in this Order and the Notice of Effective Date by no later than the Administrative Expense Claims Bar Date; *provided* that the Administrative Expense Claims Bar Date does not apply to Administrative Expense Claims arising postpetition in the ordinary course of the Debtors' business as conducted prior to the Petition Date.  Such request for payment of Administrative Expense Claim must include at a minimum:  (a) the name of the holder of the Administrative Expense Claim; (b) the asserted amount of the Administrative Expense Claim; (c) the basis of the Administrative Expense Claim; and (d) supporting documentation for the Administrative Expense Claim. HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS, THE REORGANIZED

DEBTORS, THE ESTATES, OR THE ASSETS OR PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE DISCHARGED AS OF THE EFFECTIVE DATE.

**D.      Professional Fee Claims**

24.      All Professional Persons seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, or 503(b)(2) of the Bankruptcy Code shall file, on or before the date that is thirty (30) days after the Effective Date, their respective applications (collectively, the "**Final Fee Applications**") for final allowances of compensation for services rendered, and reimbursement of expenses incurred between the Petition Date and the Effective Date and serve such applications upon the following parties (collectively, the "**Notice Parties**"):    (a) the attorneys for the Debtors, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Matthew S. Barr, Esq. (matt.barr@weil.com), Gabriel A. Morgan, Esq. (gabriel.morgan@weil.com), and Natasha S. Hwangpo, Esq. (natasha.hwangpo@weil.com)), and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. (collins@rlf.com) and Zachary I. Shapiro, Esq. (shapiro@rlf.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801 (Attn: Linda J. Casey, Esq.) (Linda.Casey@usdoj.gov); (c) attorneys for the Secured Noteholder and Convertible Noteholder, (i) Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020 (Attn: Oscar N. Pinkas, Esq. (oscar.pinkas@dentons.com), Brian E. Greer, Esq. (brian.greer@dentons.com), and Lauren Macksoud, Esq. (lauren.macksoud@dentons.com)) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: Justin R.

Alberto, Esq. (jalberto@coleschotz.com) and Andrew J. Roth-Moore, Esq. (aroth-moore@coleschotz.com)); and (d) co-counsel to the Equity Committee, (i) Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, NY 10001 (Attn:  Mark A. McDermott, Esq. (mark.mcdermott@skadden.com) and Brian Krause, Esq. (brian.krause@skadden.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, DE 19801 (Attn: Robert J. Dehney, Esq. (rdehney@mnat.com) and Eric D. Schwartz, Esq. (eschwartz@mnat.com)).  Any objection to any Final Fee Application must be filed with this Court, and served upon the applicable Professional Person and the other Notice Parties, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days after the filing of the applicable Final Fee Application.

**E.     Certain MTPC Matters**

25.     Notwithstanding anything in the Plan to the contrary, including without limitation Sections 8.1(e), 8.2(f), 10.3, 10.7(b), 10.9 of the Plan, all rights of Mitsubishi Tanabe Pharma Corporation, as successor Tanabe Seiyaku Co., Ltd. ("**MTPC**"), to assert after the Effective Date an indemnification or other Claim(s), including but not limited to claims for unpaid royalties, against the Debtors or the Reorganized Debtors, as applicable, arising on or prior to the Effective Date in connection with the agreement dated December 28, 2000 and as amended January 9, 2004, August 1, 2012, February 21, 2013, and July 1, 2013, between VIVUS, Inc. and MTPC, are preserved; *provided, that* the Debtors' and the Reorganized Debtors' rights to object, challenge, and/or defend against any such indemnification or other Claim(s) brought by MTPC are preserved.

**F.     Certain Government Matters**

26.     Notwithstanding any provision in the Plan, the Plan Supplement, this

Order or the Definitive Documents (collectively, "**Governing Documents**"):   (a) nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor, Reorganized Debtor, or non-debtor; (b) contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall, subject to any applicable legal or equitable rights, claims, causes of action, or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, be paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law in respect thereof; and (c) all rights, claims, liabilities, defenses or Causes of Action, of or to the United States or any State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or Causes of Action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing shall alter any legal or equitable rights, claims, causes of action, or defenses of the Debtors, the Reorganized Debtors, or any non-debtor under non-bankruptcy law with respect to any of the foregoing.  Without limiting the foregoing, for the avoidance of doubt, nothing in the Governing Documents shall:   (i) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (iii) be

interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other    interests; (iv) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law; or (vii) be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person, entity or non-debtor including, but not limited to, the Debtors, the Reorganized Debtors, the Liquidating Trust and Newco nor shall the Governing Documents be deemed to have determined the federal tax treatment of any item, distribution, person, entity, or non-debtor, including the federal tax consequences of this Plan.

## G.    Certain Catalent Matters

27.    Notwithstanding anything in the Plan to the contrary, including without limitation Sections 8.1(e), 8.2(f), 10.3, 10.7(b), 10.9 of the Plan, all rights of Catalent Pharma Solutions, LLC, on behalf of itself and its affiliates and related companies (collectively, "**Catalent**"), to assert after the Effective Date an indemnification or other Claim(s), against the Debtors or the Reorganized Debtors, as applicable, including but not limited to Claim(s) or defenses of setoff and recoupment, which are expressly preserved, arising on or prior to the Effective Date in connection with (i) that certain Commercial Manufacturing and Packaging Agreement dated as of July 17, 2012 by and between Catalent and VIVUS, (ii) that certain

21

Master Development and Clinical Supply Agreement dated as of September 5, 2006 by and between Cardinal Health PTS, LLC (as predecessor to Catalent) and VIVUS, and (iii) certain other quotations and other documents entered into between Catalent and VIVUS relating to work to be performed by Catalent for VIVUS (collectively with all other agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto, existing between Catalent, on the one hand, and VIVUS and/or any of its affiliates, on the other hand, the "**Catalent Contracts**"), are preserved; *provided*, that the Debtors' and the Reorganized Debtors' rights to object, challenge, and/or defend against any such indemnification or other Claim(s) brought by Catalent are preserved.

## H.    Certain Sanofi Matters

28.    Notwithstanding anything to the contrary in the Plan, the Plan Documents or this Order:

a.    All executory contracts between either of Sanofi Chimie or Sanofi Winthrop Industrie (collectively and severally, the "**Sanofi Entities**") and VIVUS (collectively and severally, the "**Sanofi Contracts**") shall be assumed pursuant to the Plan effective as of the Effective Date of the Plan;

b.    the Cure Amount for that certain Commercial Supply Agreement, dated July 24, 2013, as amended by Amendment No. 1, dated November 15, 2018 between VIVUS and Sanofi Chimie (the "**Sanofi Chimie Contract**") is €4,705,901.69 (the "**Sanofi Chimie Cure Amount**"); Reorganized VIVUS is directed to pay the Sanofi Chimie Cure Amount to Sanofi Chimie, without setoff or recoupment, pursuant to the following payment schedule, in Euros or in U.S. dollars at the U.S. Dollar/Euro exchange rate in effect on the date of payment:

i.      Within two (2) business days following the Effective Date of the Plan: €1,500,000.00;

ii.     February 15, 2021: €1,500,000; and

iii.    February 28, 2021: €1,706,901.69;

c.      (i) Unless and until provided otherwise in any written assignment executed by Reorganized VIVUS, Sanofi and Menarini pursuant to paragraph (f) below, all obligations under the Sanofi Contracts shall be performed by Reorganized VIVUS whether such obligation arises prior to or after the date such contract is assumed, or relates to a fact, act, occurrence or omission existing prior to or after the date such contract is assumed, and (ii) the Sanofi Entities shall be entitled to receive payment in full on account of, and nothing in the Plan, the Plan Documents or this Order shall release, enjoin or result in the satisfaction of: (a) the Sanofi Chimie Cure Amount; (b) any claims or other rights of any Sanofi Entity that have accrued or otherwise arisen under any Sanofi Contract on or before the Effective Date but are not in default as of the date of this Order, or (c) any claims or other rights of any Sanofi Entity that accrue or otherwise arise under any Sanofi Contract on or after the Effective Date;

d.      The claims and rights of the Sanofi Entities under the Sanofi Contracts or paragraph (b) above, and the obligations of VIVUS and Reorganized VIVUS under the Sanofi Contracts or paragraph (b) above, (a) shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan, the Plan Documents or this Order; and (b) the property of each of the Debtors and their Estates that vests in the applicable Reorganized Debtor pursuant to the Plan or this Order shall not be free and clear of such claims or contract rights; without limiting any of the

23

foregoing, the releases of non-Debtor and non-Reorganized VIVUS parties in section 10.7(b) of the Plan or any similar provision of this Order shall not take effect with respect to  the Sanofi Entities until the payment in full of the Sanofi Chimie Cure Amount or assignment of the applicable Sanofi Contract without continuing liability to VIVUS or Reorganized VIVUS as provided in subsection (f) below.  Notwithstanding the foregoing, once the Sanofi Chimie Cure Amount is timely paid in full, the discharge, and the releases, injunctions and similar provisions set forth in the Plan and this Order shall apply to the Sanofi Entities solely with respect to the two Sanofi Chimie invoices (invoice no. 9090032797 in the amount of €2,331,674.45 and invoice no. 9090033076 in the amount of €2,374,227.24) comprising the Sanofi Chimie Cure Amount;

e.      Unless hereafter agreed in writing by VIVUS or Reorganized VIVUS and Sanofi Chimie, the period for delivery of the remaining API (as defined in the Sanofi Chimie Contract) ordered by VIVUS for calendar year 2020 under Purchase Order PO04029 is extended to not later than December 31, 2021; provided, however, that absent agreement of VIVUS or Reorganized VIVUS and Sanofi Chimie otherwise, such API shall not be delivered prior to October 1, 2021; and

f.      Between the entry of this Order and March 31, 2021, VIVUS (or Reorganized VIVUS) and Sanofi  Chimie agree to continue to negotiate in good faith with each other and with Menarini regarding the potential assignment of the Sanofi Chimie Contract by VIVUS (or Reorganized VIVUS) to Menarini or to an affiliate of Menarini acceptable to Sanofi Chimie (which, if the parties hereafter agree in writing, may include VIVUS and Reorganized VIVUS having no further liability or obligation under such contract upon assignment and Reorganized VIVUS receiving reimbursement

24

from Menarini for any payments made in respect of such contract between the Effective Date and the date of any assignment, it being understood that Sanofi Chimie has not agreed that VIVUS and Reorganized VIVUS's liability for the Sanofi Chimie Cure Amount will terminate as part of any such assignment), *provided*, *however*, that no party shall be required to consent to any such assignment on terms that such party determines in its sole judgment to be unacceptable.

I.    **Newco As Sole Owner of Gross Sales; Information Obligations; Related Matters**

29.    VIVUS, Inc. and its Subsidiaries[4] agree with the Royalty Agent as follows, with such provisions solely binding upon, for the benefit of and enforceable or defensible by VIVUS, Inc. and any of its Subsidiaries, on the one hand, and the Royalty Agent, on the other hand, to the extent that the Company (or any permitted successor or assign of the Company pursuant to the Royalty Agreement that is a Company Party) has any remaining obligations with respect to Royalty payments under the Royalty Agreement not released in accordance with its terms:

a.    VIVUS, Inc. shall for itself, and shall cause its Subsidiaries (whether created prior to or after the Effective Date) to, cause the portion of Gross Sales of Royalty Products that are received and correspond to such remaining obligations under the Royalty Agreement to be paid to, and to be owned exclusively by, the Company (or such other permitted successor or assign of the Company pursuant to the Royalty Agreement that is a Company Party).  Any such Gross Sales received by VIVUS, Inc. or its Subsidiaries (whether created prior to or after the Effective Date) shall be paid, transferred or contributed to the Company without offset or deduction of any kind, and

---

[4]  All capitalized terms in this paragraph shall have the meaning ascribed in the Royalty Agreement, and if not defined therein, then the meaning ascribed in the Plan.

there shall be no defenses of offset, except for deduction of Taxes as expressly provided in Section 3.4 of the Royalty Agreement. While the Royalty calculation will take into account and be reduced by permitted development costs and expenses, under no circumstances with respect to such Gross Sales payments, transfers or contributions shall the Trust (or Royalty Agent) be obligated to pay for any development costs or expenses, including any related to VI-0106 or any other Royalty Product, including if the permitted deductions of costs and expense exceed Gross Sales in any time period.

b.      VIVUS, Inc. shall for itself, shall cause its Subsidiaries (whether created prior to or after the Effective Date), and, by contract, include a requirement that any direct or indirect licensees, sublicensees, successors, assigns and other commercial partners (to the extent not obligated under the Royalty Agreement or with respect to any Transferred Obligations thereunder) provide and make available any information to the Company (or such other permitted successor or assign of the Company pursuant to the Royalty Agreement that is a Company Party) that is necessary to ensure the Company can perform such remaining obligations under the Royalty Agreement.

c.      In connection with any assignment or transfer by (i) the Company, (ii) any of its Subsidiaries, or (iii) any other Company Party authorized on behalf of the Company, each made applicable only in the event such entity (or entities) is expressly referenced as the assigning or transferring party (and not as an assignee or transferee thereof) pursuant to the terms of Section 2.6(b)-(d), as applicable, or pursuant to Article 6 or Article 7 of the Royalty Agreement, of any rights or obligations implicating sub-paragraphs (a) and (b) (inclusive of the preamble), VIVUS, Inc. shall for itself, and shall cause its Subsidiaries (whether created prior to or after the Effective Date) to, cause the

obligations implicated in sub-paragraphs (a) and (b) (inclusive of the preamble) of this paragraph to be assumed by such assignee or transferee so as not to impair the Royalty Agent's rights and protection under such sub-paragraphs.  VIVUS, Inc. agrees it shall cause to be included a provision in such assignment or transfer agreement (and make the Royalty Agent a third party beneficiary thereof) providing that the assignee or transferee must do so in any mediate assignment or transfer.  Any purported transfer, assignment, or other arrangement in violation of this sub-paragraph shall be null and void *ab initio*.

**J.     Miscellaneous**

30.     The Debtors are authorized to consummate the Plan at any time after the entry of this Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date, and all parties in interest shall be entitled to rely upon this Order in taking any actions or performing any obligations to consummate the Plan.

31.     Nothing in this Order shall constitute or be deemed to be a waiver, modification, or suspension of section 525 of the Bankruptcy Code or any party's rights thereunder.  Notwithstanding anything in paragraph 26 of this Order, paragraph 26 shall exclude and not concern the SEC, including any right, claim, liability, defense or Cause of Action by or of the SEC; *provided*, *however*, that the foregoing sentence shall not impair or abrogate the effectiveness of paragraph 21 as such paragraph relates to the SEC.

32.     Subject to paragraph 13 of this Order, the Debtors need not provide any further evidence other than the Plan or this Order with respect to the treatment of the securities to be issued under the Plan under applicable securities laws or the validity of any other transaction contemplated by the Plan or this Order.

33.     The requirement that the Debtors file the Schedules and Statements is

hereby waived.

34.    The requirement to convene the 341 Meeting is hereby waived.

35.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, the terms and conditions of this Order will be effective and enforceable immediately upon its entry.

36.    This Order constitutes all authority required by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation and consummation of the Plan, Plan Supplement documents, and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

37.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order and all matters arising in and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan, or pursuant to section 1142 of the Bankruptcy Code.

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

**Dated: December 10th, 2020**
**Wilmington, Delaware**

28